**IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF UTAH**

**CENTRAL DIVISION**

| | |
|---|---|
| **VALERIE ANN GRIFFITHS-RAST, an individual,** | |
| **Plaintiff,** | **MEMORANDUM DECISION AND ORDER** |
| **vs.** | |
| **SULZER SPINE TECH, INC., a Minnesota Corporation; and PRAVEEN PRASAD, M.D.,** | **Case No.  2:02CV1267 DAK** |
| **Defendants.** | |

This matter is before the court on Defendants' motions for summary judgment on the grounds that Plaintiff's claims are barred by the applicable statutes of limitation.  A hearing on the motions was held on September 8, 2005.  At the hearing, Plaintiff Valerie Ann Griffiths-Rast ("Ms. Griffiths-Rast") was represented by D. Bruce Oliver.  Defendant Praveen Prasad, M.D. ("Dr. Prasad") was represented by Brandon Hobbs, and Defendant Sulzer Spine Tech, Inc. ("Sulzer Spine")[1] was represented by Andrea Roberts.  Before the hearing, the court carefully considered the memoranda and other materials submitted by the parties.  Since taking the motions under advisement, the court has further considered the law and facts relating to the motions.  Now being fully advised, the court enters the following Memorandum Decision and

---

[1]Sulzer Spine refers to itself in its memoranda as "Zimmer Spine, Inc."  However, for purposes of this Memorandum Decision and Order, it will be referred to as "Sulzer Spine."

Order.

## I.  BACKGROUND

The court finds that the following facts are undisputed.  Ms. Griffiths-Rast sustained a back injury at work in February 1997.  She was referred to Dr. Prasad by her Worker's Compensation carrier.  In August 1997, after reviewing Ms. Griffiths-Rast's MRI scan, Dr. Prasad originally recommended physical therapy; however, during a follow-up visit on March 19, 1998, Dr. Prasad suggested that she undergo a surgical procedure, the BAK Cage implantation, to address her ongoing back pain.  The BAK Cage is an interbody fusion device manufactured by Sulzer Spine.  Ms. Griffiths-Rast stated that prior to her March 19 visit with Dr. Prasad, she was doing better in physical therapy and able to lift seventy pounds, but she still had residual pain after physical therapy.  She also indicated that Dr. Prasad told her with the surgery she had a ninety-five percent chance of going back to work after a six month healing process.

Dr. Prasad performed the surgery on August 3, 1998.  Prior to surgery, Ms. Griffiths-Rast signed a consent form that authorized Dr. Prasad to perform the surgery, and it identified the name of device to be implanted in her spine.  Following the surgery, Ms. Griffiths-Rast experienced complications and remained in the hospital for twelve days.

During her deposition, Ms. Griffiths-Rast indicated that she was aware of a problem with the BAK Cage implantation immediately after the surgery during her hospital recovery.  When asked if she "felt like there was a problem with the cage implantation" and "with what Dr. Prasad did," she answered affirmatively and further testified that "[e]verything went wrong."  She also indicated that she attributed the pain she experienced after surgery "to something Dr. Prasad did

or didn't do during the procedure" or "to some problem with the . . . cage device."  Ms. Griffiths-Rast  stated that she retained counsel a couple of weeks after her surgery "[w]hen [she] wasn't getting any better."

On November 10, 1998, Ms. Griffiths-Rast received an SI injection from a doctor at Parkview Radiology who informed her that "there was a healing defect on the left side of [the] cage." Ms. Griffiths-Rast admits in her response to Dr. Prasad's motion for summary judgment that the earliest point where she could reasonably be aware of medical malpractice was during this visit to Parkview Radiology.

On November 26, 2001, Dr. Prasad was deposed in a case against another patient.  During that deposition, Dr. Prasad indicated that he had moved out of Utah in September 2000.  Dr. Prasad also intimated that while he was on Sulzer Spine's advisory board from 1998 to 2000, he may have periodically been out of the state teaching the BAK Cage procedure to his peers around the country.

Also on November 26, 2001, Ms. Griffiths-Rast served Dr. Prasad a Notice of Intent to Commence Action ("Notice") as required by the Utah Health Care Malpractice Act.  *See* Utah Code Ann. § 78-14-8 (2002) ("No malpractice action against a health care provider may be initiated unless and until the plaintiff gives the prospective defendant or his executor or successor, at least ninety days' prior notice of intent to commence an action.").  Ms. Griffiths-Rast further claims that she did not discover the name of the manufacturer of the BAK Cage until a meeting with Dr. Prasad on October 4, 2002.

On November 26, 2002, a year after serving Dr. Prasad Notice, Ms. Griffiths-Rast  filed a

3

complaint against both Dr. Prasad and Sulzer Spine alleging medical malpractice and products

liability respectively.  On January 30, 2003, Ms. Griffiths-Rast filed an amended complaint to

include certain factual allegations but her claims against both Dr. Prasad and Sulzer Spine

remained the same.  However, she did not serve Sulzer Spine with the amended complaint until

February 11, 2004.

## II.  DISCUSSION

### 1.  Standard of Review

A motion for summary judgment under Rule 56 of the Federal Rules of Civil Procedure is

appropriate when the pleadings, depositions, and affidavits on file show that there is no genuine

issue as to any material fact and that the moving party is entitled to judgment as a matter of law.

The movant bears an initial burden to demonstrate an absence of evidence to support an essential

element of the non-movant's case.  If the movant carries this initial burden, the burden then shifts

to the non-movant to make a showing sufficient to establish that there is a genuine issue of

material fact regarding the existence of that element.  *See Celotex Corp. v. Catrett*, 477 U.S. 317,

324 (1986).

The non-movant "must do more than simply show that there is some metaphysical doubt

as to the material facts."  *Matsushita Electric Industrial Co. v. Zenith Radio Corp.*, 475 U.S. 574,

586 (1986).  While the non-movant is entitled to the benefit of whatever reasonable inferences

there are in its favor, the reasonableness of those inferences is scrutinized in light of the

undisputed facts.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986).  A genuine dispute

exists only if "the evidence is such that a reasonable jury could return a verdict for the

nonmoving party." *Anderson,* 477 U.S. at 248.  "By its very terms, this standard provides that

the mere existence of *some* alleged factual dispute between the parties will not defeat an

otherwise properly supported motion for summary judgment; the requirement is that there is no

*genuine* issue of *material* fact."  *Anderson*, 477 U.S. at 247-48 (emphasis in original).

### 2.  Dr. Prasad's Motion

Dr. Prasad argues that Ms. Griffiths-Rast's claims against him are barred by the Utah

Healthcare Malpractice Act ("Malpractice Act") which provides that "[n]o malpractice action

against a health care provider may be brought unless it is commenced within two years after the

plaintiff or patient discovers, or through the use of reasonable diligence should have discovered

the injury, whichever occurs first."  Utah Code Ann. § 78-14-4(1) (2002).  The discovery of a

legal injury occurs "when the injured person knew or should have known of an injury and that the

injury was caused by a negligent act."  *Collins v. Wilson*, 984 P.2d 960, 966 (Utah 1999).

Furthermore, "'[d]iscovery of a legal injury, therefore, encompasses both awareness of physical

injury and knowledge that the injury is *or may be attributable to negligence.*'"  *Id.* (quoting

*Chapman v. Primary Children's Hosp.*, 784 P.2d 1181, 1184 (Utah 1989)).

Because Ms. Griffiths-Rast served Dr. Prasad with Notice on November 26, 2001, she

must have necessarily discovered her legal injury on or after November 26, 1999 in order to

pursue her claim.  However, Dr. Prasad asserts that at Ms. Griffiths-Rast's deposition she

admitted to discovering her injury immediately after surgery, which was on August 3, 1998, and

thus well before November 26, 1999.  Dr. Prasad further asserts that the latest possible date on

which Ms. Griffiths-Rast discovered or should have discovered her legal injury was November

10, 1998 when a doctor at Parkview Radiology informed her of a "healing defect on the left side of [the] cage."   Accordingly, Dr. Prasad concludes that Ms. Griffiths-Rast's claims are barred by the Malpractice Act's statute of limitations whether her cause of action accrued in August 1998 or in November 1998 because she served Notice well after the limitations period expired for either date.

Ms. Griffiths-Rast concedes that the earliest she could have discovered her legal injury was November 10, 1998.  However, she argues that Dr. Prasad's absence from Utah in September 2000 and his periodic absences between 1998 and 2000 tolled the two-year statute of limitations under Utah Code section 78-12-35.  This statute provides:

> Where a cause of action accrues against a person when he is out of the state, the action may be commenced within the term as limited by this chapter after his return to the state.  If after a cause of action accrues he departs from the state, the time of his absence is not part of the time limited for the commencement of the action.

Utah Code Ann. § 78-12-35.  Ms. Griffiths-Rast concludes that the time between September 2000, when Dr. Prasad left Utah, and November 26, 2001, when he was served with Notice, should not be computed against her.  She also requests further discovery pursuant to Federal Rule of Civil Procedure 56(f) in order to establish other periods of time Dr. Prasad was absent from Utah during 1998 to 2000.

However, the court agrees with Dr. Prasad's argument that section 78-12-35 is inapplicable to toll the statute of limitations.  The Malpractice Act specifically provides that its two-year limitations period "shall apply to all persons, regardless of minority or other legal disability under Section 78-12-36 or any other provision of the law . . . ."  Utah Code Ann. § 78-

6

14-4(2).  As the Utah Court of Appeals has explained, "[t]he Utah Legislature has demonstrated that if it seeks specifically to exempt a statute from the tolling statute, it will do so with clear, explicit language."  *Bonneville Asphalt v. Labor Comm'n*, 91 P.3d 849, 852 (Utah Ct. App. 2004).  Because the Malpractice Act provides an explicit exception to section 78-12-35 by requiring the two year statute of limitations to apply to "all persons," section 78-12-35 does not apply in medical malpractice cases.[2]  Thus, Ms. Griffiths-Rast's claim against Dr. Prasad was not tolled.  Therefore, whether Ms. Griffiths-Rast discovered or should have discovered her legal injury in August 1998 or November 10, 1998 is immaterial because both dates are well before the date she served Dr. Prasad Notice on November 26, 1999.  Accordingly, Dr. Prasad's motion for summary judgment is granted.

### 3.  Sulzer Spine's Motion

Sulzer Spine asserts that Ms. Griffiths-Rast's claims are barred by the Utah Product Liability Act's ("UPLA") statute of limitations, which provides that a plaintiff must commence a product liability claim within two years of the date that plaintiff "discovered, or in the exercise of due diligence should have discovered, both the harm and its cause."  Utah Code Ann. § 78-15-3. The harm is the physical injury or illness suffered by the plaintiff as a result of the defendant's conduct.  *McKinnon v. Tambrands, Inc.*, 815 F. Supp 415, 418 (D. Utah 1993).  In *Aragon v.*

_____

[2]However, the Utah Supreme Court in *Lee v. Gaufin*, 867 P.2d 572 (Utah 1993), held that section 78-14-4(2) is unconstitutional as applied to minors because they have no standing to commence a lawsuit before they reach majority.  *See id.* at 579.  That reasoning is not applicable in the instant case because Ms. Griffiths-Rast was not a minor when her cause of action accrued.

*Clover Club Foods Co.*, 857 P.2d 250 (Utah Ct. App. 1993), the Utah Court of Appeals

interpreted the phrase "and its cause" to mean that the limitations period did not begin to run

"until the plaintiff discovers, or in the exercise of due diligence should have discovered, the

identity of the manufacturer." *Id.* at 253.  The court "reasoned that lacking such information, a

plaintiff could not know the cause of his or her injury." *Bank One Utah, N.A. v. West Jordan

City*, 54 P.3d 135 (Utah Ct. App. 2002) (discussing *Aragon* and distinguishing the differences

between the Malpractice Act's statute of limitations and the UPLA's statute of limitations).

Relying on this language from *Aragon*, Ms. Griffiths-Rast asserts that her products liability claim

against Sulzer Spine was tolled by her inability to discover the identity of the BAK Cage

manufacturer prior to her meeting with Dr. Prasad on October 4, 2002.

　　　　"Generally, the question of when a plaintiff knew, or with reasonable diligence should

have known, of a cause of action is a question of fact for the jury." *McCollin v. Synthes Inc.*, 50

F. Supp. 2d 1119, 1123 (D. Utah 1999).  However, this determination can be made as a matter of

law when the evidence is such that no issue of material fact exists.  *Id.*  "What constitutes due

diligence 'must be tailored to fit the circumstances of each case.  It is that diligence which is

appropriate to accomplish the end sought and which is reasonably calculated to do so.'" *Aragon*,

857 P.2d at 253 (citations omitted).

　　　　Ms. Griffiths-Rast offers no evidence to suggest that she made the required due diligence

inquiry to determine the manufacturer of the BAK Cage prior to meeting with Dr. Prasad.  She

argues that an affidavit of her counsel's paralegal, Jason Jensen, indicates that the nurse paralegal

he contracted with to research the claims against Dr. Prasad provided internet literature for the

LT-Cage rather than the BAK Cage and that, because of this, they were led to believe the LT-Cage was the device used.  However, this does not demonstrate "due diligence."  While Ms. Griffiths-Rast knew the name of the device implanted in her spine prior to her surgery, and she retained counsel to pursue her claim within a couple of weeks of the surgery, neither she nor her counsel undertook any effort to identify the BAK Cage manufacturer prior to meeting with Dr. Prasad.  "The discovery rule does not allow plaintiffs to delay filing suit until they have ascertained every last detail of their claims."  *McCollin*, 50 F. Supp. 2d at 1124; *see also McKinnon*, 815 F. Supp. at 421.  "All that is required [to trigger the statute of limitations] is . . . sufficient information to apprise [the plaintiffs of the underlying cause of action] so as to put them on notice to make further inquiry if they harbor doubts or questions" about the defendant's actions. *McCollin*, 50 F. Supp. 2d at 1124 (quoting *United Park City Mines Co. v. Greater Park City Co.*, 870 P.2d 880, 889 (Utah 1993)).  Because Ms. Griffiths-Rast had sufficient information immediately after her surgery to put her on notice that she may have a cause of action against the manufacturer of the BAK Cage, and she did not exercise due diligence in discovering the name of the manufacturer, her claim against Sulzer-Spine was not tolled by her failure to discover its identity.

Ms. Griffiths-Rast also asserts that her claim against Sulzer Spine was tolled by its status as a foreign corporation.  Specifically, she contends that because Sulzer Spine is a foreign corporation and, at the time of Ms. Griffiths-Rast's surgery, did not have a registered agent in Utah pursuant to Utah Code section 78-27-21, it is not entitled to assert a statute of limitations defense.  However, the case cited by Ms. Griffiths-Rast to support this assertion expressly

9

rejected this argument.  *See Clawson v. Boston Acme Mines Development Co.*, 72 Utah 137, 269 P. 147 (1928).  The plaintiffs in *Clawson* argued that because the defendant failed to comply with Utah law authorizing foreign corporations to conduct business in Utah, it was not entitled to use a statute of limitations defense.  *Id.* at 151.  The Utah Supreme Court rejected this argument and held that foreign corporations may assert a statue of limitations defense even if the corporation failed to register an agent or otherwise comply with statutes governing foreign corporations.  *Id.* at 151-52.  The court further stated that under the applicable Utah statute, a foreign corporation is only barred from "prosecuting or maintaining any action, suit, counterclaim, or cross-complaint in any court of the state.  It does not prohibit such corporation from defending an action brought against it."  *Id.* at 152.  The court concluded that "[t]here is no condition tolling the statute [of limitations] as to foreign corporations."  *Id.*  Therefore, Sulzer Spine's status as a foreign corporation did not toll the statute of limitations, and Ms. Griffiths-Rast's claim is untimely.  Accordingly, Sulzer Spine's Motion for Summary Judgment is granted.

### III.  CONCLUSION

For the foregoing reasons, IT IS HEREBY ORDERED that Defendants' Motions for Summary Judgment [docket #54 and docket #58] are GRANTED.  Because there are no remaining claims against any Defendants, this action is hereby DISMISSED.

DATED this 14th day of September, 2005.

BY THE COURT:

_____
DALE A. KIMBALL
United States District Judge

10